IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY as Subrogee of Fiorucci Foods, Inc., </br></br>Plaintiff,</br></br>v.</br></br>MENOZZI LUIGI & C. S.p.A.,</br></br>Defendant. | Civil Action No. 3:15cv36–HEH |

## MEMORANDUM OPINION
(Denying Defendant's Motion to Dismiss)

This matter involves alleged breaches of express and implied warranties and purported negligence by Defendant Menozzi Luigi & C. S.p.A. ("Menozzi"), an Italian corporation, related to its design, fabrication, and installation of a customized twin rail conveying system ("Rack System") for Fiorucci Foods, Inc.'s ("Fiorucci") meat curing facility in Chesterfield County, Virginia ("Virginia facility"). Plaintiff Liberty Mutual Fire Insurance Company ("Plaintiff") as subrogee seeks $1,950,000 in damages from Menozzi as reimbursement for payment to its insured, Fiorucci, resulting from the collapse of the rack system at the Virginia facility.

Presently before the Court is Menozzi's Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (ECF No. 12), filed on February 6, 2015. The matter has been fully briefed, and the Court heard oral argument on March 10, 2015. For the reasons stated herein, the Motion to Dismiss will be denied.

## I. BACKGROUND

Pursuant to Federal Rule of Civil Procedure 12(b)(2), this Court draws "all reasonable inferences arising from the proof, and resolve[s] all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). Viewed through this lens, the facts are as follows.

Plaintiff "provided [Fiorucci] commercial property insurance ... [which] covered business, real and personal property owned by Fiorucci at 1800 Ruffin Mill Road, Chesterfield, V[irginia]." (Am. Compl., ECF No. 1-2, at ¶ 1.) Menozzi is "an Italian corporation with its principal business in Albinea, Italy." (*Id.* at ¶ 2.) "Prior to June 15, 2012, Fiorucci hired[1] [Menozzi] to design and supply a [rack system] for installation at the [Virginia] [f]acility for the purpose of hanging meat to cure." (*Id.* at ¶ 4.) Thereafter, Menozzi supplied and delivered a rack system "designed specifically for the [Virginia] [f]acility to Fiorucci [for] the intended purpose of hanging meat to cure." (*Id.* at ¶ 5–6.) Menozzi "provided two technicians to supervise the installation of the [rack system] at the [Virginia] [f]acility to ensure it was installed in accordance with [Menozzi's] design specifications." (*Id.* at ¶ 7.) "The Menozzi technicians were on site at the [Virginia] [f]acility during the rack system's installation." (*Id.* at ¶ 8.) "On or about June 15, 2012, the [rack system] collapsed at the Virginia facility" because, Plaintiff avers, "the system

---

[1] In its Reply, Menozzi focuses on Plaintiff's use of the term "contract" in various pleadings, contending that the use of the term inappropriately suggests a breach of contract claim analysis where no breach of contract claim was raised in the Amended Complaint. (Def.'s Reply, ECF No. 17, at 3–6.) Although the Court agrees that specific jurisdiction is claim specific, both parties use the term "contract" where beneficial. *See* Def.'s Mem. Supp. Mot. to Dismiss, ECF No. 13, at 9. It is sufficient that, as Menozzi's counsel conceded at oral argument, the parties entered into an agreement. The Court's analysis does not turn on whether a formal contract existed. Instead, taken together, the *Consulting Eng'rs Corp. v. Geometric Ltd.* business context factors counsel the Court to find personal jurisdiction in this case. 561 F.3d 273, 278 (4th Cir. 2009)

as designed, supplied, and installed did not adequately support its intended weight." (*Id.* at ¶ 9.) The collapse of the rack system resulted in $1,950,000 in damages to Fiorucci's real, personal, and business property which Plaintiff reimbursed under the insurance policy. (*Id.* at ¶ 10–11.)

Plaintiff alleges in Count I that Menozzi breached its duty to use reasonable care by "failing to properly supervise installation of the system as designed." (*Id.* at ¶ 16.) In Count II, Plaintiff alleges Menozzi breached an express warranty by "[s]upervising the installation of the rack system...at the [Virginia] facility in a defective manner." (*Id.* at ¶ 21.) Finally, Plaintiff alleges in Count III that Menozzi breached an implied warranty of merchantability by providing a "custom [rack system] for the [Virginia] [f]acility [that] was [not] in working order at the time of installation." (*Id.* at ¶ 30.)

## II. STANDARD OF REVIEW

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(2) challenges the court's exercise of personal jurisdiction over a defendant. "When a court's personal jurisdiction is properly challenged . . . the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs.*, 2 F.3d at 60 (citations omitted). "If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When, as here, the court decides personal jurisdiction without an evidentiary hearing, it may do so based solely on the motion papers, supporting legal memoranda and the relevant allegations of the complaint. *Id.* If the court proceeds in

this fashion, "the plaintiff need prove only a *prima facie* case of personal jurisdiction," with the court drawing "all reasonable inferences arising from the proof, and resolv[ing] all factual disputes, in the plaintiff's favor." *Mylan Labs*, 2 F.3d at 60 (internal citations omitted).[2]

If Plaintiff makes the requisite showing, Menozzi then bears the burden of presenting a "compelling case" that, for other reasons, the exercise of jurisdiction would be so unfair as to violate Due Process. *Burger King v. Rudzewicz*, 471 U.S. 462, 477–78 (1985).[3] Thus, "for a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Where, as in Virginia, a forum state extends the grant of personal jurisdiction as far as the Due Process Clause allows, the statutory and constitutional inquiries merge, and the reviewing court "has jurisdiction over a nonresident defendant if the exercise of such jurisdiction is consonant with the strictures

---

[2] If a plaintiff makes this *prima facie* showing, the issue is not settled as the "plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005).

[3] In the context of Due Process analysis, courts have distinguished between the exercise of general and of specific jurisdiction. *See ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 624 (4th Cir. 1997) (explaining that the level of minimum contacts to confer specific jurisdiction is significantly lower than that required for general jurisdiction). Specific jurisdiction may be exercised over a nonresident defendant who "engages in *some* activity purposefully directed toward the forum state." *Id.* at 213 (citation omitted) (emphasis added). Here, Plaintiff only alleges, and the Court only considers, a theory of specific jurisdiction.

4

of due process."[4] *Tire Eng'g v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). Accordingly, the Court will employ the well-established due process analysis.

### III. DISCUSSION

Under the Due Process Clause of the Fourteenth Amendment, a court may exercise personal jurisdiction over a non-resident defendant only if the defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "Fairness is the touchstone of the jurisdictional inquiry." *Tire Eng'g*, 682 F.3d at 301. When determining whether specific jurisdiction over a non-resident defendant comports with due process, the Fourth Circuit considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Id.* at 302.

---

[4] Plaintiff did not allege in its Amended Complaint that personal jurisdiction is satisfied under a subsection of Va. Code § 8.01-328.1(A) ("Virginia's Long-Arm Statute"). However, in its Memorandum in Opposition to Menozzi's Motion to Dismiss, Plaintiff asserts that Menozzi has availed itself of this Court's jurisdiction under subsections (4) and (5) of Virginia's Long-Arm statute in that Menozzi caused tortious injury and breach of warranties in the Commonwealth by an act or omission outside the Commonwealth while also deriving substantial revenue. (Pl.'s Mem. Opp. Def.'s Mot. to Dismiss, ECF No. 16, at 6.) Although these subsections are likely satisfied, a more fitting subsection of Virginia's Long-Arm statute is subsection (1) which provides for personal jurisdiction over any person who "directly or by an agent" "transact[s] any business in th[e] Commonwealth" so long as the cause of action arises from that business. Va. Code Ann. § 8.01-328.1(A)(1). In light of Virginia being a "single-act state requiring only one transaction in Virginia to confer jurisdiction," and the importance of the rack system's installation in Virginia to each of Plaintiff's claims, subsection (1) of Virginia's Long-Arm Statute is satisfied and provides the most appropriate basis for personal jurisdiction. *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 257 Va. 315, 319–20, 512 S.E.2d 560, 562–63 (1999); *see also Production Group Int'l v. Goldman*, 337 F.Supp.2d 788, 793–97 (E.D.Va. 2004) (citation omitted).

### i. *Menozzi Purposefully Availed itself of Virginia*

Purposeful availment, the first prong of the inquiry, turns on whether Menozzi has such "minimum contacts" with Virginia that it may be deemed to have purposefully availed itself of the "privilege of conducting business under the laws of the [Commonwealth]." *Consulting Eng'rs*, 561 F.3d at 278. "The relevant question is not where the contacts predominate, but only whether enough minimum contacts exist that the district court's assumption of specific jurisdiction satisfie[s] due process." *English & Smith v. Metzger*, 901 F.2d 36, 39 (4th Cir. 1990). It is axiomatic that "[s]o long as the act has substantial connection to the forum, even a single act single act can support jurisdiction." *Burger King*, 471 U.S. at 475 n.18 (citation and quotation marks omitted). When considering minimum contacts in the business context, the Fourth Circuit considers the following non-exclusive factors:

> (1) "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;" and (8) "whether the performance of contractual duties was to occur within the forum."

*Consulting Eng'rs*, 561 F.3d at 278 (internal citations omitted).

Although the Fourth Circuit enumerates relevant factors, "minimum contacts analysis [ ] is not susceptible to mechanical application" and, thus, does not end with a mere survey of the box score. *Id.* (citing *Int'l Shoe Co.*, 326 U.S. at 319). Stated another

6

way, a court does not determine purposeful availment simply based upon which party has more factors in its favor or the quantity of defendant's contacts. Instead, the test is "flexible" and "proceeds on a case-by-case basis," considering the "qualitative nature of each of the defendant's connections to the forum state." *Tire Eng'g*, 682 F.3d at 301–02; *see also Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (expounding that courts "should not 'merely...count the contacts and quantitatively compare [one] case to other preceding cases.'") (citation omitted and ellipses in original).

Arguing that Menozzi has purposefully availed itself of Virginia, Plaintiff points to Menozzi: (1) entering an agreement with Fiorucci to assemble and install the rack system in Virginia; (2) designing the rack system exclusively for Fiorucci's Virginia facility; and (3) providing the labor to assemble and install the custom designed rack system at the Virginia facility.[5] (Pl.'s Mem. Opp. Mot. to Dismiss, ECF No. 16, at 9.) The Court finds that Plaintiff has made a *prima facie* showing that Menozzi purposefully availed itself of Virginia.

Menozzi deliberately entered into an agreement with Fiourcci that contemplated completion of the project, namely installation, in Virginia. (Pl.'s Mem. Opp. Mot. to Dismiss at 3.) True to the agreement, Menozzi installed the customized rack system at the Virginia facility. Menozzi errantly compares its contacts with Virginia to the forum state contacts of the defendants in *Consulting Engineers* and *Foster v. Arletty 3 Sarl*, 278

---

[5] Whether, as Menozzi contends, Fiorucci hired another party to finish the installation after Menozzi's technicians visited Virginia to do so goes to the merits of this case, and personal jurisdiction "is not determined from taking a peek at the merits." *Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1128 (4th Cir. 1986).

7

F.3d 409, 415 (4th Cir. 2002). (Def.'s Mem. Supp. Mot. to Dismiss at 10.) Menozzi's contacts with Virginia are meaningfully distinguishable from those defendants. In *Consulting Engineers*, all of the contemplated work would have occurred outside the forum state, the activity giving rise to the action occurred outside the forum state, and India law would have governed. *Consulting Eng'rs*, 561 F.3d at 280. Similarly, the defendant's only contacts with the forum state in *Foster* were "fleeting communication by telephone and fax ... while [defendant] was in [forum state]." *Foster*, 278 F.3d at 415. Here: (1) installation, a critical portion of the agreement, was to, and indeed did, occur in Virginia;[6] (2) Menozzi received a floor plan of the Virginia facility to allow customization of the rack system for the Virginia facility; and (3) Virginia law would govern as this is an action in tort, and the rack system's collapse in Virginia was the "last event necessary to make [Menozzi's] act liable for [the] alleged tort[s]." *Consulting Eng'rs*, 561 F.2d at 280 n.6 (citation omitted). Customizing a rack system to fit the contours of the Virginia facility, and sending technicians to Virginia for the installation of that customized product are activities giving "fair warning" of potential litigation within

---

[6] Menozzi attempts to obfuscate this essential contact by claiming that its relationship with subcontractor Emetti di Scalia Giovanni ("Emetti") is akin to the defendant's relationship with a subcontractor in *Haskins v. Washington Adventist Hospital*. 2012 WL 92360 (HEH), at *4–5. Notwithstanding the fact that this Court rendered the decision in *Haskins*, the comparison is inapposite. In *Haskins*, the plaintiff, a patient at a Maryland hospital, was transferred to a Virginia hospital via the Maryland hospital's third-party transportation service. *Id.* The Court held that third-party transportation did not demonstrate purposeful availment of Virginia because, in essence, it amounted to merely shipping goods into the forum state. *Id.* at *4 (citing *O'Neal v. Hicks, Co.*, 537 F.2d 1266, 1267–68, (4th Cir. 1976)). Here, assembly and installation of the rack system in Virginia by Menozzi was expressly called for in the agreement between the parties, and the document confirming the agreement indicates as much. (Pl.'s Mem. Supp. Mot. to Dismiss, Ex. A. thereto.) Menozzi, unbeknownst to Fiorucci, hired Emetti to complete the installation services, and paid Emetti directly through funds received from Fiorucci. (Pl.'s Mem. Opp. Mot. to Dismiss, Ex. B thereto.) The facts in *Haskins*, as well as the other unpublished district court opinions cited by Menozzi, are entirely dissimilar. Menozzi agreed to undertake services in Virginia and did so through Emetti.

Virginia. *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009) (citation omitted).

In addition to these more substantive contacts, discussions between Fiorucci and Menozzi further manifest Menozzi's purposeful availment of Virginia. The discussions spanned for nearly a year, from May 2003 to April 2004, ending with the installation of the rack system in Virginia. More important than duration, however, is Virginia's centrality to these communications.[7] From the onset of communications between Fiorucci and Menozzi, Virginia was the focal point. First, as Menozzi admits, Fiorucci reached out solely concerning the need of a customized rack system for a plant expansion at Fiorucci's Virginia facility. (Pl.'s Mem. Opp. Mot. to Dismiss at 3.) Next, Fiorucci supplied Menozzi with engineer drawings for the Virginia facility to ensure that that the rack system was custom built to fit the facility's contours. (*Id.*) After designing and fabricating the rack system in accordance with the Virginia facility's floor plan, Menozzi's subcontractor assembled and installed the rack system at the Virginia facility. (*Id.*) The nature and quality of these contacts evidence that Menozzi's activities toward Virginia were not "too unfocused" or purely happenstance, but were expressly aimed at

---

[7] Menozzi unconvincingly strives to deemphasize Virginia's centrality to the communications by noting they were: (1) handled by Mr. Colmignoli ("Colmignoli"), who Menozzi later discovered was a former resident of Italy and top-level director at Fiorucci Italty; and (2) conducted almost entirely in the Italian language. (Def.'s Mem. Supp. Mot. to Dismiss at 9.) Notably, Menozzi does not argue that Colmignoli held himself out as doing business on behalf of any entity other than Fiorucci's Virginia facility. Indeed, each exhibit documenting communications between the parties references only the Virginia facility's address. Importantly, the Fourth Circuit considered the language of both the contract and the parties' communications consequential in *Foster* because "fleeting communications" comprised the entirety of the defendant's forum state contact. *See Foster*, 278 F.3d at 415.

the Commonwealth.[8] *ESAB Group, Inc.*, 126 F.3d at 620.

Initiation of the business relationship by Fiorucci, contrary to Menozzi's assertion, does not destroy Menozzi's purposeful availment of Virginia. The Fourth Circuit has not made any single factor dispositive of the inquiry, except to note that initiation of the business relationship *and* in-person contact regarding the business relationship in the forum state are important to the jurisdictional analysis. *See Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 562 (4th Cir. 2014). Nevertheless, the Fourth Circuit has reiterated that a "prospective defendant need not initiate the relevant minimum contacts to be regarded as purposefully availing himself of the privileges of conducting activity in the forum state." *Christian Sci. Bd. of Dirs.*, 259 F.3d at 216 (citation and quotation marks omitted); *see also Tire Eng'g*, 682 F.3d at 302 (explaining that where sufficient minimum contacts are found, "that the defendant did not initiate the contacts does not bar a judicial finding of purposeful availment") (citing *Christian Sci. Bd. of Dirs.*, 259 F.3d at 216).

Fiorucci reached out to initiate the business relationship, but this relationship was purely related to Virginia. Fiorucci sought Menozzi's work precisely for the Virginia

---

[8] These contacts also demonstrate the futility of Menozzi's contention that personal jurisdiction is lacking because the design and fabrication of the rack system constituted "the essence of the contract" and occurred entirely in Italy. (Def.'s Mem. Supp. Mot. to Dismiss at 9.) The true essence of this agreement included the assembly and installation of the rack system in the Virginia facility. Moreover, the design and fabrication was specific to the Virginia facility. Importantly, this customization viewed together with the agreement to assemble and install the product in Virginia clearly distinguishes this case from *Asahi Metal* and its progeny, cases which Menozzi incorrectly suggests compels dismissing this case. (Def.'s Mem. Supp. Mot. to Dismiss at 13–15.) Unlike the defendants in *Asahi Metal*, Menozzi did not simply place a product into the stream of commerce with knowledge that it would eventually find its way to Virginia. *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 112 (1987). Rather, Menozzi's design, assembly, and installation of the customized rack system were directed at Virginia.

facility. Most critically, Menozzi deliberately entered into an agreement with Fiorucci which contemplated, and ultimately culminated with, Menozzi's technicians visiting Virginia for assembly and installation of the rack system. Just as in *Christian Science*, "[Menozzi's] connection [to Virginia] was by no means fortuitous or unwitting." *Christian Sci. Bd. of Dirs.*, 259 F.3d at 217.[9]

Consequently, the Court finds that Menozzi has such minimum contacts with Virginia that it purposefully availed itself of Virginia, and should "[have] reasonably anticipate[d] being haled into court [here]." *Universal Leather, LLC*, 773 F.3d at 559–60 (citations and quotation marks omitted). Because Menozzi has minimum contacts manifesting purposeful availment of Virginia, the Court must now determine whether Plaintiff's "claims arise out of those activities." *Tire Eng'g*, 682 F.3d at 302 (citation omitted).

### ii. Plaintiff's Claims Arise from Menozzi's Virginia-related Activities

Unlike purposeful availment analysis, the "analysis here is generally not complicated." *Id.* at 303. A plaintiff's claims have been found to arise from a defendant's activities directed at the forum where: (1) the "activity in the forum state is

---

[9] Similarly, other factors weighing against Fiorucci do not destroy Menozzi's substantial connection to Virginia. Menozzi does not maintain property nor have agents or officers in Virginia, but neither does Menozzi have officers or property in any other state. (Decl. of Eric Menozzi ("Menozzi Decl."), ECF No. 14, at ¶¶ 26, 27.) Yet, Menozzi conducts nearly 10% of its business in the United States. (*Id.* at ¶ 5.) Menozzi knowingly entered into an agreement with a Virginia company to design, fabricate, and install a customized product for that company's Virginia facility. Menozzi did not stumble upon Virginia's centrality to this agreement. Instead, as explained earlier, the record evinces that Virginia was the focal point of the agreement. Under these factual circumstances, Menozzi should not be allowed to shield itself from this court's specific jurisdiction based upon Fiorucci initiating the relationship and having no property or agents in the forum. *See Base Metal Trading, Ltd. v. OJSC*, 283 F.3d 208, 215 (4th Cir. 2002) (clarifying that while property or lack thereof in forum state "may" have an impact on the jurisdictional analysis, "ties among the defendant, the State, and the litigation" remains the benchmark).

'the genesis of [the] dispute'"; or (2) "substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim." *Id.* This explication in *Tire Engineering* does not introduce a binary choice for courts, as the critical issue remains whether the plaintiff's claims arise out of "[forum state]—related activities" that manifest purposeful availment. *Christian Sci. Bd. of Dirs.*, 259 F.3d at 217.

Plaintiff's claims plainly appear to arise from Menozzi's activities directed at Virginia.[10] Each of Plaintiff's claims relates, in some manner, to Menozzi's technicians' Virginia visit to assemble and install the rack system. The genesis of the dispute, specifically Menozzi's agreement to design, assemble, and install a custom rack system for a Virginia company, was formed only after Menozzi's correspondence with Colmignoli, an individual working from Virginia on behalf of Fiorucci's Virginia facility. Additionally, Menozzi's correspondence with Colmignoli concerning the contours of the Virginia facility and design requirements necessary for the rack system form an important part of the claims. Distilled to their essence, Menozzi's Virginia-related contacts "form[] the basis" of Plaintiff's claims. *Christian Sci. Bd. of Dirs.*, 259 F.3d at 217. For these reasons, the Court finds that Plaintiff's claims arise from Menozzi's Virginia-related activities.

 *iii.* ***Exercising Personal Jurisdiction over Menozzi is Constitutionally Reasonable***

---

[10] It is worth noting that Menozzi's pleadings do not address this prong of the inquiry.

12

The Fourth Circuit examines the third, and final, prong of the due process inquiry to "ensure[] that litigation is not 'so gravely difficult and inconvenient'" as to place the defendant at a "'severe disadvantage in comparison to his opponent.'" *CFA Inst.*, 551 F.3d at 292 (citations omitted). "The burden on the defendant, interests of the forum state, and the plaintiff's interest in obtaining relief guide [the] inquiry." *Tire Eng'g*, 682 F.3d at 301 (citations omitted).

The only burden faced by Menozzi in litigating this action in Virginia is its incorporation and principal place of business being in Italy.[11] By the same token, however, Plaintiff faces an equal burden if this action were to be litigated in Italy. Menozzi's burden, however, is "mitigated" where, as here, the Court finds "it was reasonably foreseeable that the defendant could be subject to suit [in the forum state]." *CFA Inst.*, 551 F.3d at 296 (citation omitted). Menozzi's burden is further mitigated by its ability to secure competent Virginia counsel. *Id.* Menozzi not only customized a rack system to fit the contours of Fiorucci's Virginia facility, but supplied and installed that customized product at the Virginia facility. Stated simply, Menozzi is "not shielded from civil liability in Virginia because it is headquartered in [another country]." *Id.* As to the second factor, although the Plaintiff is not a Virginia company, it seeks redress of alleged tortious injuries sustained by a Virginia company in Virginia, thus invoking the laws of Virginia. Therefore, Virginia has a substantial interest in adjudicating this matter. *See Tire Eng'g*, 682 F.3d at 305. Lastly, Plaintiff, an approved insurer in Virginia, certainly

---

[11] Menozzi argues that *Foster* and *Chung* counsel the Court against finding the exercise of personal jurisdiction constitutionally reasonable. As recounted earlier, the defendants in *Foster* and *Chung* never made direct contact with the forum state, only shipping to the state by chance or making several calls to the plaintiff who was in the forum state. *See Foster*, 278 F.3d at 415; *see also* Chung, 783 F.2d at 1129.

has considerable interest in obtaining relief for the payment of $1,950,000 to Fiorucci related to the damages that were allegedly caused by Menozzi's tortious conduct. Plaintiff is "entitled to utilize the judicial system in Virginia to protect and vindicate its [] rights" as an approved insurer of Virginia companies. *CFA Inst.*, 551 F.3d at 297. Since litigating this matter in Virginia does not "place [Menozzi] at a severe disadvantage in comparison to [Plaintiff]," this Court's decision to exercise personal jurisdiction is constitutionally reasonable.

## IV. CONCLUSION

Having found sufficient grounds for jurisdiction under Virginia's Long-Arm Statute, specifically Va. Code § 8.01-328.1(A)(1), and the Due Process Clause of the Fourteenth Amendment, the Court holds that Plaintiff has made a *prima facie* case that personal jurisdiction attaches in this matter. *Mylan Labs., Inc.*, 2 F.3d at 60. Accordingly, Defendant's Motion to Dismiss is denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: March 17 2015
Richmond, Virginia